UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-14206-RAR

**MARK ALAN PENNINGTON**,

    Plaintiff,

v.

**CENTURION HEALTH, INC.**, *et al.*,

    Defendants.
_____/

### ORDER DISMISSING COMPLAINT IN PART, ALLOWING COMPLAINT TO PROCEED IN PART, AND REQUIRING AMENDED MOTION TO PROCEED IN FORMA PAUPERIS

**THIS CAUSE** comes before the Court on Plaintiff's *pro se* civil rights Complaint filed under 42 U.S.C. § 1983. *See* Complaint ("Compl.") [ECF No. 1]. Plaintiff raises a claim of deliberate indifference to medical needs under the Eighth Amendment of the United States Constitution against twelve defendants in their individual and official capacities—all of whom were involved with Plaintiff's medical care at Okeechobee Correctional Institution ("Okeechobee C.I.") in Okeechobee, Florida. *See* Compl. ¶¶ 7–20. After carefully screening the Complaint in accordance with 28 U.S.C. §§ 1915A and 1915(e), the Court will **DISMISS** some of Plaintiff's claims and allow the rest of the claims to **PROCEED**, but only if Plaintiff files an amended motion to proceed *in forma pauperis* ("IFP") in a timely manner.

### FACTUAL ALLEGATIONS[1]

Plaintiff has been incarcerated at Okeechobee C.I. since December 18, 2012. *See* Compl.

---

[1] Since the screening standard under § 1915A is functionally similar to the "failure to state a claim standard" under FED. R. CIV. P. 12(b)(6), the Court will assume all of the factual allegations in the Complaint are true. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). The parties should not interpret the Court's recitation of the factual allegations in the Complaint as a comment on their veracity.

¶¶ 7, 21.  While incarcerated, Plaintiff "has had a well documented history of cronic [sic] and ongoing digestive system issues."  *Id.* at ¶ 22.  These issues were well-known and documented by Okeechobee C.I. officials—including Dr. Haridas Bhadja, Physician Assistant Louis-Jacques, Nurse "S. Jackson," Nurse "S. Scholl," and Nurse Louis.  *See id.* ¶¶ 22.

"On July 1, 2019, after months of increasing bouts of constipation and increasing constriction of his colon, Plaintiff became completely . . . constipated, [and] would not respond to proscribed medications."  *Id.* ¶ 23.  Over the next sixteen days, Plaintiff made several sick call requests and declared four medical emergencies, but Okeechobee C.I. staff either ignored his complaints, provided ineffective treatment, accused Plaintiff of lying about his condition, and/or falsified medical records to indicate that Plaintiff had not been complaining about intestinal pain.  *See id.* ¶¶ 23–28.  On July 17, 2019, Dr. Bhadja finally ordered an enema for Plaintiff—who had not had a bowel movement in sixteen days—but the enema had no effect.  *See id.* ¶¶ 29–30.

Plaintiff's condition had not improved by July 21, 2019, which is when Plaintiff was brought back to the Okeechobee C.I. infirmary to prepare for a previously scheduled colonoscopy.  *See id.* ¶ 33.  Despite Plaintiff's pleas to be taken to a hospital for further treatment, the nursing staff instead administered magnesium citrate to prepare Plaintiff for the colonoscopy.  *See id.* ¶ 33–34.  The magnesium citrate caused Plaintiff "extreme pain," but Plaintiff still did not have a bowel movement after 21 days of constipation.  *Id.* ¶¶ 34–35.  The next day, Plaintiff was transported to Larkin Community Hospital in Miami, Florida, for the colonoscopy.  Despite being told by Plaintiff that the colonoscopy prep had failed—and that Plaintiff was in extreme pain from his prolonged constipation—the doctors at Larkin decided to attempt the colonoscopy.  *See id.* ¶¶ 34–36.  The colonoscopy failed, Plaintiff "awoke from the procedure in excruciating pain," and the doctors at Larkin decided to send Plaintiff back to Okeechobee C.I. (instead of an emergency

room) even though Plaintiff told the doctors "he was in fear for his very life." *Id.* ¶ 37.

On July 23, 2019, Physician Assistant Philippe Louis-Jacques decided to perform a C.T. scan of Plaintiff's abdomen and provide new medications—he ignored Plaintiff's request to be transferred to a local hospital for emergency treatment. *See id.* ¶ 39. Two days later, and after twenty-five days of no bowel movements, Plaintiff's colon burst. *Id.* ¶ 41. Dr. Bhadja initially intended to keep Plaintiff at Okeechobee C.I. for further observation, but only acquiesced after one of the nurses "insisted that Plaintiff would be dead very soon and that he must be taken to [the] emergency [room]." *Id.* ¶ 42. Once at the hospital, a surgeon "performed a life-saving operation for over 5 hours" where a "significant portion" of Plaintiff's colon was removed. *Id.* ¶ 44–45. Plaintiff remained on life support for eight days, was hospitalized for over two months, underwent two more surgeries, and was forced to use an ostomy bag for over a year. *See id.*

Plaintiff also alleges that medical staff at Okeechobee C.I. continued to ignore his post-operative needs on at least two occasions. First, Plaintiff avers that Okeechobee C.I. staff waited "over 150 days with no justifiable medical reason" for a reverse colostomy—even though the surgeon recommended that the procedure take place "after 30 days." *Id.* ¶¶ 47, 53. This delay caused Plaintiff to contract a urinary tract infection, caused "unnecessary pain," and adversely affected Plaintiff's sleep. *See id.* ¶¶ 48–51. Second, Plaintiff recounts that he suffered an abdominal hernia on May 22, 2020, but that it took months to receive any treatment after frequent complaints to medical staff. *See id.* ¶¶ 56–61. He specifically complains that Dr. "L. Santana" was responsible for not providing him timely relief for his hernia. *See id.* ¶¶ 193–94.

**LEGAL STANDARD**

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

**ANALYSIS**

Plaintiff raises only one constitutional claim in his Complaint: that various officials at Okeechobee C.I. were deliberately indifferent to his serious medical needs in violation of the

Eighth Amendment.  Plaintiff names twelve[2] defendants in his Complaint, all of whom he believes are culpable for this alleged constitutional violation: (1) Centurion Health, the private healthcare provider for Okeechobee C.I.; (2) Dr. Haridas Bhadja, the former chief health officer of Okeechobee C.I.; (3) Phillippe Louis-Jacques, a physician assistant and clinician at Okeechobee C.I.; (4) Larkin Community Hospital, the hospital where Plaintiff received his botched colonoscopy; (5) "Dr. John Doe #1," the doctor at Larkin who performed the colonoscopy; (6) "John Doe #2," an employee at Larkin who assisted "Dr. John Doe #1"; (7) "Dr. L. Santana," the current chief health officer at Okeechobee C.I.; (8) "S. Jackson," the director of nursing at Okeechobee C.I.; (9) "John or Jane Doe," the regional health services administrator for the Florida Department of Corrections; (10) Mark S. Inch, the former Secretary of the Florida Department of Corrections; (11) "S. Scholl," a female nurse at Okeechobee C.I.; and (12) "J. Louis," another female nurse at Okeechobee C.I."  Compl. ¶¶ 8–19.

To state a valid deliberate indifference claim, Plaintiff must show that he had a "serious medical need," that each defendant exhibited "deliberate indifference to that need," and that there was "causation between [each defendant's] indifference and [Plaintiff's] injury."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  The first prong is easily met since Plaintiff alleges that he had (and still has) a serious medical need.  A "serious medical need" is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and, if left unattended, would pose "a substantial risk of serious harm."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

---

[2]  Plaintiff technically names a thirteenth defendant, "Nurse D. Brown," but the Complaint does not assert any factual allegations against Nurse Brown.  *See generally* Compl.  Since Plaintiff has plainly failed to state a claim against Nurse Brown, the Court will **DISMISS without prejudice** any allegations against this individual.

Plaintiff has not only alleged that he suffered from a severe gastrointestinal problem which caused excruciating pain and prevented Plaintiff from having a bowel movement for over three weeks, but that Defendants failure to adequately treat the problem caused his colon to burst and for him to suffer substantial post-operative health problems. *See generally* Compl. ¶¶ 23–45. Needless to say, a medical condition that causes an inmate extreme pain and which later requires an emergency surgery because of a delay in treatment is sufficiently "serious" under the Eighth Amendment. *See Farrow*, 320 F.3d at 1243; *see also, e.g.*, *Paulk v. Ford*, 826 F. App'x 797, 804 (11th Cir. 2020) (holding that a "bowel obstruction" that required "emergency life-saving surgery" was a serious medical need).

The primary question before the Court, then, is whether each of the defendants Plaintiff names were deliberately indifferent to Plaintiff's serious medical needs and, if so, whether that deliberate indifference caused Plaintiff to suffer an injury. To show that a defendant was deliberately indifferent to his serious medical needs, Plaintiff must prove that each defendant had "subjective knowledge of a risk of serious harm," that the defendant "disregard[ed] that risk," and that the defendant's conduct was "more than gross negligence." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1227 (11th Cir. 2007). To facilitate an orderly review of the Complaint, the Court will divide all of the defendants into different "categories" and consider Plaintiff's allegations against them in turn.

### A. All Official Capacity Claims Must be Dismissed

Plaintiff has chosen to sue every defendant in both their individual and official capacities. *See* Compl. ¶¶ 8–19. In contrast to bringing a claim against individual state actors, an official capacity claim "is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v.*

*Graham*, 473 U.S. 159, 165 (1985)). This means that a suit "against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The plaintiff has the burden in official capacity suits to show that "the [governmental] entity's 'policy or custom' . . . played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). While a defendant sued in his or her official capacity is not permitted to "assert personal immunity defenses" (such as qualified immunity), he or she may avail themselves to "forms of sovereign immunity that the entity, *qua* entity, may possess[.]" *Id.* at 167.

Plaintiff is not permitted to bring an official capacity claim against any of the Defendants because they are all immune from being sued in their official capacities. Plaintiff only requests monetary damages from this action. *See generally* Compl. But "the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169; *accord Cross v. State of Ala.*, 49 F.3d 1490, 1503 (11th Cir. 1995) ("The Eleventh Amendment bars appellees' section 1983 lawsuit for monetary damages against [the defendants] in their official capacities."). The long and short of it is that Plaintiff cannot advance an official capacity claim against any Defendant if he also wants to seek monetary damages, so the Court must **DISMISS** all of Plaintiff's official capacity claims.

### B. The Okeechobee C.I. Staff Defendants

The Court will next turn to the Defendants who worked at Okeechobee C.I. and purportedly had a direct hand in managing Plaintiff's medical care: Dr. Bhadja, Mr. Louis-Jacques, Dr. Santana, Nurse Jackson, Nurse Scholl, and Nurse Louis (the "Okeechobee C.I. Staff"). According to Plaintiff, all six of these Defendants—at various times during his incarceration—were familiar

with Plaintiff's "history of cronic [sic] and ongoing digestive system issues" but either refused or delayed providing effective treatment. Compl. ¶¶ 22. Plaintiff argues that there were three distinct periods of time where at least some of these Defendants exhibited deliberate indifference to his medical needs: the period leading up to his colon rupturing (July 1, 2019 until July 25, 2019), the period before he received a reverse colostomy (approximately December 10, 2019 until July 21, 2020), and then while Plaintiff was suffering complications from a hernia (roughly May 22, 2020 until July 29, 2021).

The Court agrees that Plaintiff has stated a claim against all of these Defendants and that a suit may proceed against them. As the Court described in the factual background section above, Plaintiff alleges that all six Defendants were, at various points in time, aware of Plaintiff's serious medical needs but failed to provide competent medical treatment. *See generally* Compl. ¶¶ 21–68. The Eleventh Circuit has "repeatedly" found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment," or in circumstances where "a prison official . . . delay[s] the treatment of serious medical needs," or when prison staff makes "a decision to take an easier but less efficacious course of treatment." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citing *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997)). Plaintiff has alleged that the Okeechobee C.I. Staff engaged in all three of these improper practices, and that this deliberate indifference has caused him debilitating pain for years. *See* Compl. ¶ 68. Since Plaintiff has properly alleged all elements of an Eighth Amendment deliberate-indifference claim against the Okeechobee C.I. Staff, the Court will allow the claims against these six Defendants to **PROCEED**.

### C. The Supervisory Defendants

Plaintiff also attempts to sue the former Secretary of the Florida Department of Corrections, Mark S. Inch, and an unknown "Regional Health Administrator" for the Florida Department of Corrections (the "Supervisory Defendants"). *See* Compl. ¶¶ 16–17. Plaintiff's central conceit is that these two high-ranking Department of Corrections officials "knew or should have known" that Plaintiff was in dire need of medical care and that their subordinates at Okeechobee C.I. were providing substandard care. *See id.* ¶¶ 177–81, 199–204.

In liberally construing the Complaint, the Court finds that Plaintiff is arguing these Defendants should be just as liable as their subordinates since they are responsible for supervising them. But that argument is contrary to law. A supervisor is only liable under § 1983 "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). The Eleventh Circuit utilizes a three-prong test to determine if a supervisor is liable: "(1) whether the supervisor's failure to adequately train and supervise subordinates constituted deliberate indifference to an inmate's medical needs; (2) whether a reasonable person in the supervisor's position would understand that the failure to train and supervise constituted deliberate indifference; and (3) whether the supervisor's conduct was causally related to the subordinate's constitutional violation." *Wade v. McDade*, 67 F.4th 1363, 1377 (11th Cir. 2023) (quoting *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995)). In contrast, supervisors <u>are not</u> liable merely because their subordinates violate the plaintiff's constitutional rights. *See Poag*, 61 F.3d at 1544 ("Supervisory personnel . . . cannot be held liable under section 1983 for the actions of their subordinates under a theory of *respondeat superior*.").

Neither Secretary Inch nor the Regional Health Administrator were "personally" involved in Plaintiff's medical care, nor are they liable simply because they employed persons (*i.e.*, the Okeechobee C.I. Staff) that purportedly violated Plaintiff's constitutional rights. Plaintiff can only state a claim against the Supervisory Defendants if there was a causal connection between their actions (or inactions) and the deliberate indifference shown by their subordinates. *See Cottone*, 326 F.3d at 1360. Plaintiff cannot meet this burden since these Supervisory Defendants did not fail to adequately train or supervise their employees. A supervisor is not responsible for training or supervising an employee on matters that are so "obvious" that "the failure to train or supervise is generally not 'so likely' to produce a wrong decision[.]" *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)). Put another way, supervisors are not required to train or supervise an employee to do (or not do) something that would be "obvious to all without training or supervision." *See Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1357 (11th Cir. 2022) (holding that a sheriff was not liable for failing to supervise a police officer who committed a sexual assault while on duty since it is "patently obvious" that "a police officer should not (and may not) sexually assault citizens in his custody").

Here, it is "patently obvious" that medical personnel in a prison should promptly treat a prisoner's serious medical needs—especially when those needs are causing weeks of excruciating pain and/or when a doctor has prescribed a specific course of treatment—so the Supervisory Defendants' purported failure to train and supervise "would probably not be the cause of the constitutional violation." *Luka v. City of Orlando*, No. 07-CV-841, 2009 WL 10706047, at *9 (M.D. Fla. May 21, 2009); *see also, e.g.*, *Baughman v. Garcia*, 254 F. Supp. 3d 848, 883 (S.D. Tex. 2017) (finding that it was not a supervisor's "responsibility to supervise or train Dr. Harper

to provide adequate medical care" because the dentist did not "requir[e] instruction in the practice of dentistry when he commenced his employment at the Jail"). Since there is no causal connection between the Supervisory Defendants and the alleged deliberate indifference of their employees, the Court **DISMISSES** Plaintiff's claims against them.

### D. The Corporate Defendants

Next, Plaintiff brings claims against two different corporate entities (the "Corporate Defendants") that were involved in his medical care: Centurion Healthcare, Inc., which employs the Okeechobee C.I. Staff; and Larkin Community Hospital, which is where Plaintiff's failed colonoscopy took place. When a private corporation "contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of a municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). This means that the Corporate Defendants "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when the execution of [the Corporate Defendants'] policy or custom . . . inflicts the injury that [the Corporate Defendants] [are] responsible under § 1983." *Id.* (quoting *Monell,* 436 U.S. at 694). Plaintiff insists that Centurion has a custom or policy of "willfully and knowingly subjecting inmates to unnecessary pain and suffering[.]" Compl. ¶ 101. Plaintiff does not allege that Larkin Community Hospital had an unconstitutional policy or custom but instead claims that they are liable because their employees were deliberately indifferent to his needs. *See id.* ¶¶ 121–27.

Neither Corporate Defendant is liable. *First*, Plaintiff never claims that Larkin had an unconstitutional custom or policy, and, as the Court just explained, a municipal defendant is not liable under § 1983 merely because it employs individuals who purportedly violate the plaintiff's constitutional rights. *See Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en

banc) ("[L]iability under § 1983 may not be based on the doctrine of respondeat superior."); *see also Buckner*, 116 F.3d at 452 (rejecting argument that "a private entity [that] contracts with the county to provide medical services to inmates" is liable under a respondeat superior theory). *Second*, Centurion is also not liable since Plaintiff has not shown that his subpar medical treatment was pursuant to a widespread and unconstitutional policy. A "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the [company]." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011). Although Plaintiff speculates that "[d]iscovery will reveal this custom [and] policy is widespread," Compl. ¶ 102, this assumption is solely based on "[Plaintiff's] experience alone," which is simply not sufficient to allege the existence of an unconstitutional policy or custom, *Craig*, 643 F.3d at 1312. Since Plaintiff has not shown that either of the Corporate Defendants employed a policy or custom that, by its nature, fosters deliberate indifference to the medical needs of prisoners in their employees, these claims are **DISMISSED**.

### E. The Larkin Defendants

Finally, Plaintiff alleges that Dr. John Doe #1 and John Doe #2, the two defendants employed at Larkin Community Hospital who performed Plaintiff's colonoscopy (the "Larkin Defendants"), were deliberately indifferent to his medical needs. Unlike the Okeechobee C.I. Staff, the Larkin Defendants were only involved with Plaintiff's medical care on one day, July 22, 2019. *See* Compl. ¶¶ 130, 143. But, as Plaintiff tells it, this brief contact was sufficiently unconstitutional for two reasons. First, Plaintiff claims that the Larkin Defendants were deliberately indifferent when they attempted a colonoscopy, even though Plaintiff "inform[ed] [them] of both the 21 days of complete constipation/blockage or obstruction" of his bowels. *Id.* ¶ 133. Plaintiff then says that this error was compounded when, instead of "admit[ting] him for

emergency care," the Larkin Defendants sent him back to Okeechobee C.I. *Id.* ¶ 138. The gravamen of Plaintiff's allegations against these Defendants, in other words, is that Plaintiff informed the Larkin Defendants about his serious medical needs, but that they simply ignored him, performed a procedure they should not have done, and then sent him back to Okeechobee C.I. knowing that Plaintiff would not receive proper medical treatment there. *See id.* ¶ 141 ("Having subjective knowledge of the 21 day history of maltreatment and deliberate indifferences by the [Okeechobee C.I. Staff], this amounts to deliberate indifference for not providing emergency care[.]").

The Court finds that, on these facts, neither of the Larkin Defendants were deliberately indifferent to Plaintiff's medical needs since their conduct was, at worst, merely negligent. The Larkin Defendants apparently ignored Plaintiff's attempts to self-report his medical history, but they were also faced with contradictory medical information from the prison itself. According to Plaintiff, the Okeechobee C.I. Staff purposely falsified Plaintiff's medical records to give the impression that Plaintiff was not suffering from a severe medical ailment. *See, e.g.*, *id.* ¶ 26 (alleging that nurses accused Plaintiff of declaring "fake" medical emergencies); *id.* ¶ 30 ("[I]t was documented incorrectly [that Plaintiff] produced a 'bowel movement[.]'"); *id.* ¶ 34 (alleging that he was sent to Larkin for the colonoscopy even though the Okeechobee C.I. staff "were well aware that the prep failed"). The Larkin Defendants' only task was to perform a colonoscopy, not conduct a full medical examination, so it was reasonable for them to still attempt the procedure when Plaintiff's medical records were silent about the true severity of Plaintiff's gastrointestinal health. Then, when the colonoscopy failed, the Larkin Defendants were again faced with contradictory information—Plaintiff expressed fear for his life, but his medical records told an

entirely different story—to determine if Plaintiff should be admitted to the emergency room instead of being returned to Okeechobee C.I.

A defendant's behavior is more than "grossly negligent" when he "recklessly disregard[s] a substantial risk of serious harm to the inmate[,]" so Plaintiff needs to show that the Larkin Defendants' decision to believe Okeechobee C.I.'s medical records and entrust the Okeechobee C.I. Staff with Plaintiff's future medical care was done in reckless disregard of his medical needs. *Wade*, 67 F.4th at 1375 (internal quotations omitted).  That is not what happened here.  Plaintiff concedes that the Larkin Defendants had a "lengthy discussion[ ]" and that they "call[ed] others" before deciding to return him to Okeechobee C.I.  Compl. ¶ 139.  It was not, as Plaintiff implies, a cavalier decision that was taken recklessly and without thought.  The Larkin Defendants' decision not to admit Plaintiff to the emergency room may have been an error, but an erroneous medical decision, even if it amounts to medical malpractice, is not equivalent to "gross negligence."  *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Mere medical malpractice, however, does not constitute deliberate indifference."); *Poag*, 61 F.3d at 1545 ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

The Complaint does not establish that the Larkin Defendants were more than grossly negligent when they treated Plaintiff.[3]  For that reason, the Court **DISMISSES** the claims against them.

---

[3] The Court also doubts that the Larkin Defendants' actions "caused" Plaintiff's injuries.  According to Plaintiff, Okeechobee C.I. Staff continued to ignore Plaintiff's medical needs for at least four days after the Larkin Defendants observed Plaintiff.  *See* Compl. ¶¶ 39–41.  Even if the Larkin Defendants were deliberately indifferent when they returned Plaintiff to Okeechobee C.I., the Okeechobee C.I. Staff's continued refusal to treat Plaintiff's serious medical need for four days is an intervening cause that severs the causal chain between the Larkin Defendants' actions and Plaintiff's injuries.  *See Buckman v. Halsey*,

### F. *Plaintiff's IFP Motion*

Plaintiff has not paid the filing fee and has instead requested to proceed *in forma pauperis*. *See* IFP Motion [ECF No. 3]. When a prisoner intends to proceed IFP, he must supply "an affidavit that includes a statement of all assets such prisoner possesses" and "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint[.]" 28 U.S.C. § 1915(a)(1)–(2). Although Plaintiff has provided the appropriate affidavit, he has not included a certified copy of his prisoner trust fund account statement. Without this statement, the Court cannot grant Plaintiff IFP status, and this suit cannot proceed, unless Plaintiff's IFP status is resolved or the filing fee is paid in full. Accordingly, the Court will provide Plaintiff with **thirty (30) days** to file a new amended IFP Motion which includes an affidavit and a copy of Plaintiff's 6-month account statement. Once the Court receives the amended IFP motion, it will order the U.S. Marshals Service to serve the proper Defendants and this action may progress. The Court warns Plaintiff, however, that it will dismiss the entirety of Plaintiff's suit for failure to prosecute and failure to comply with this Court's orders if he does not file his amended IFP motion in a timely manner. *See* FED. R. CIV. P. 41(b).

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint [ECF No. 1] shall **PROCEED** against Defendants Dr. Haridas Bhadja, Dr. L. Santana, PA Philippe Louis-Jacques, Nurse S. Jackson, Nurse S. Scholl, and Nurse J. Louis in their individual capacities. Plaintiff's official capacity claims against these

---

No. 20-13596, 2021 WL 4127067, at *3 (11th Cir. Sept. 10, 2021) ("A defendant's actions are not the proximate cause of a plaintiff's injury where there was an independent intervening cause.").

Defendants are **DISMISSED**. The Court will order the U.S. Marshals Service to serve these Defendants once Plaintiff files an amended IFP motion.

  2. Plaintiff's claims against Centurion Health, Inc., Larkin Community Hospital, Dr. John Doe #1, John Doe #2, Regional Health Administrator John or Jane Doe, and Mark S. Inch are **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915A. The Clerk is instructed to **TERMINATE** these Defendants.

  3. Plaintiff's claim against Nurse D. Brown is **DISMISSED without prejudice**. The Clerk shall **TERMINATE** this Defendant.

  4. Plaintiff's Motion to Proceed *in forma pauperis* [ECF No. 3] is **DENIED without prejudice**. Plaintiff <u>must</u> file an amended IFP Motion, with a 6-month prisoner account statement, on or before **August 25, 2023**. Plaintiff is warned that failure to file his amended IFP Motion on time and in compliance with this Court's Orders shall result in dismissal of this case for failure to prosecute or failure to comply with court orders. *See* Fed. R. Civ. P. 41(b).

  5. The Clerk's Office is **INSTRUCTED** to administratively **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 26th day of July, 2023.

_____
RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

cc: Mark Alan Pennington
  DC # I45635
  Okeechobee Correctional Institution
  Inmate Mail/Parcels
  3420 NE 168th Street
  Okeechobee, FL 34972
  PRO SE