UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-14206-RAR

**MARK ALAN PENNINGTON**,

    Plaintiff,

v.

**DR. HARIDAS BHADJA**, *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint ("Mot."), [ECF No. 35]. Defendants ask the Court to dismiss Plaintiff's Complaint, [ECF No. 1], with prejudice since Plaintiff failed to state a claim and did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* Mot. at 1–2. Plaintiff filed a Response to the Motion ("Resp."), [ECF No. 56]. After careful review of the relevant pleadings and the governing law, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss, [ECF No. 35], is **GRANTED in part**. Plaintiff's Complaint shall be **DISMISSED without prejudice** and with leave to amend.

## BACKGROUND

This case concerns Defendants' alleged deliberate indifference to Plaintiff's medical needs while Plaintiff was incarcerated at the Okeechobee Correctional Institution ("Okeechobee C.I.") in Okeechobee, Florida. *See Pennington v. Centurion Health, Inc.*, No. 23-CV-14206, 2023 WL 4763222, at *1 (S.D. Fla. July 26, 2023). Although Plaintiff initially named twelve different

defendants, the Court screened his Complaint under 28 U.S.C. § 1915A and determined that Plaintiff's claims could only proceed against six defendants in their individual capacity: Dr. Haridas Bhadja, the former chief health officer of Okeechobee C.I.; Phillippe Louis-Jacques, a physician's assistant; Dr. Lynette Santana, the current chief health officer of Okeechobee C.I.; Nurse Shynetra Jackson, the head nurse at the prison; and two other nurses employed at the prison, Nurse Shelia Scholl and Nurse Jamie Louis. *See id.* at *2, *4.

The Court found that Plaintiff sufficiently alleged that these six defendants were "familiar" with Plaintiff's history of chronic digestive system issues "but either refused or delayed providing effective treatment." *Id.* at *4. The Court further concluded that Plaintiff had shown "that there were three distinct periods of time where at least some of these Defendants exhibited deliberate indifference to his medical needs: the period leading up to his colon rupturing (July 1, 2019 until July 25, 2019), the period before he received a reverse colostomy (approximately December 10, 2019 until July 21, 2020), and then while Plaintiff was suffering complications from a hernia (roughly May 22, 2020 until July 29, 2021)." *Id.*

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678. A dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits" and is "presumed to operate as a dismissal with

prejudice unless the district court specifies otherwise." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001)).

A court considering a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted). And "determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations accepted) (quoting *Iqbal*, 556 U.S. at 679).

## **ANALYSIS**

Defendants provide three reasons to dismiss Plaintiff's Complaint. *First*, Defendants argue that Plaintiff failed to state a claim of deliberate indifference under the Eighth Amendment. *See* Mot. at 3. Specifically, Defendants aver that Plaintiff failed (1) to demonstrate a serious medical need, (2) to show that any of the Defendants acted with deliberate indifference, and (3) to provide a causal link between Defendants' actions and any injury Plaintiff might have suffered. *See id.* at 3–8. *Second*, Defendants state that Plaintiff failed to comply with the "pre-suit notice and screening requirements . . . [for] 'medical malpractice or medical negligence'" actions as required

by Florida Statutes, Chapter 766. *Id.* at 9 (quoting *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 948 (Fla. 1994)). *Third*, Defendants claim that Plaintiff "failed to exhaust his administrative remedies, by failing to file an informal or formal grievance pertaining to the allegations against each of the Defendants." *Id.* at 15. The Court will address each of these arguments in reverse order.

### A. Failure to Exhaust Administrative Remedies

Defendants initially argued in their Motion that "it does not appear Plaintiff filed any informal/formal grievances pertaining to each Defendant and their purported failures to treat Plaintiff's abdominal pain and/or gastric complaints." *Id.* at 12. Based on this conclusory allegation, Defendants urged the Court to find that Plaintiff failed to comply with the PLRA and to dismiss the case. *See id.* After reviewing the Motion, the Court found that "[b]inding Eleventh Circuit caselaw" required the Court "to make factual findings before ruling on the substance of an exhaustion defense," so it ordered both parties to file "supplemental briefs addressing exhaustion." Order Requiring Supplemental Briefing, [ECF No. 37], at 1, 3. After several motions for extension of time were granted, both parties filed their respective supplemental briefs. *See* Pl.'s Suppl. Br., [ECF No. 57]; Defs.' Suppl. Br., [ECF No. 52].

#### i. The Exhaustion Requirement

The PLRA forbids prisoners from bringing suits related to their prison conditions unless "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When a prison "provides a grievance procedure," a prisoner "must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211

(2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Bryant v. Rich*, 530 F.3d 1368, 1373 (11th Cir. 2008) ("We have no discretion to waive this exhaustion requirement."). The prisoner must file grievances "even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Although a prisoner "need not name any particular defendant in a grievance in order to properly exhaust his claim[,]" his or her grievance must still be sufficiently detailed to have "alert[ed] prison officials" to the specific issues raised in the prisoner's complaint. *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218–19 (11th Cir. 2010) (quoting *Jones*, 549 U.S. at 219).

The only exception to the PLRA's exhaustion requirement is when a grievance procedure is "unavailable." *See Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The Supreme Court has identified three circumstances in which administrative remedies are "unavailable": "(1) when the administrative procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) where the administrative scheme is 'so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it'; and (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross*, 578 U.S. at 643–44).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court must compare the factual allegations in the defendant's motion to dismiss with those in the plaintiff's response and, if they conflict, presume that "the plaintiff's version of the facts [are] true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust

administrative remedies, it must be dismissed." *Id.* (citing *Bryant*, 530 F.3d at 1373–74). Second, if the plaintiff's version of the facts indicates that he has exhausted his remedies, the court must then "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*; *see also Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits."). The defendants "bear the burden of proving that plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082.

A prisoner in the custody of the Florida Department of Corrections who wishes to file a medical grievance must follow a two-step grievance procedure: (1) "file a formal grievance with the warden's office,"; and (2) "submit an appeal to the Office of the Secretary of the FDOC[.]" *Parzyck*, 627 F.3d at 1218 (citing Fla. Admin. Code r. 33-103.006(3)(e)). These formal grievances must be submitted within fifteen calendar days from the "date on which the incident or action being grieved occurred[.]" Fla. Admin. Code r. 33-103.011(1)(b). In exceptional circumstances, an inmate may file an "emergency grievance" directly with the Secretary if it "concerns matters which 'would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm.'" *Gipson v. Renninger*, 750 F. App'x 948, 952 (11th Cir. 2018) (quoting Fla. Admin. Code r. 33-103.002(4)). Direct grievances must also be filed within fifteen days "from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(d).

### ii. The Proffered Facts

The Court will begin its analysis under *Turner* by summarizing the parties' positions on exhaustion as laid out in their supplemental briefing. According to Defendants, they reviewed "the entirety of Plaintiff's inmate medical grievances from January 1, 2019–December 31, 2022."

Defs.' Suppl. Br. at 2.  They concluded that Plaintiff filed only one medical grievance, dated June 30, 2021, which "pertain[ed] to a June 25, 2021, sick call request to be seen by a physician for his abdominal pain and constipation."  *Id.* at 3; *see also* June 30, 2021 Grievance History, [ECF No. 52-1], at 1–4.  This grievance failed to address any of the other "chronic gastric issues" mentioned in the Complaint, nor did it mention any of the Defendants.  *See* Defs.' Suppl. Br. at 3.  Based on these records, Defendants argue that Plaintiff "failed to timely and properly exhaust his administrative remedies due to his failure to file any grievances, formal or informal, related to Defendants and the allegations set forth against them in the complaint."  *Id.* at 4.

Plaintiff, unsurprisingly, disagrees with Defendants' characterization of the evidence. Plaintiff contends that he also filed an emergency grievance directly with the Secretary's Office on July 21, 2019, concerning the prison's failure to treat his gastrointestinal issues, but that he never received a response.  *See* Pl.'s Suppl. Br. at 1.  The July 21, 2019 Grievance complained about Plaintiff's "need for immediate emergency care . . . and the repeated failures and delays by medical staff to provide any diagnosis and effective treatment."  *Id.* at 9.  Plaintiff alleges that, since submitting the July 21, 2019 Grievance, prison officials "thwarted the grievance procedure" by either failing to respond to his grievances or by threatening to retaliate against Plaintiff by placing him in isolation if he attempted to file additional grievances.  *See id.* at 3–6.  Plaintiff explains that he only "felt safe" to file grievances again after Sergeant Lepore, the primary antagonist who had threated Plaintiff, left Okeechobee C.I.  *See id.* at 6.  Once Plaintiff no longer felt threatened by Sgt. Lepore, he filed another grievance on June 30, 2021.  *See id.*  The June 30, 2021 Grievance complained about medical staff delaying effective treatment despite making sick call requests on June 12, 2021, and June 25, 2021.  *See* June 30, 2021 Grievance, [ECF No. 52-1],

at 4. Plaintiff also referenced "severe abdominal pain, constipation/diarrhea cycles and cronic [sic] heartburn" that "were ongoing since 7-1-2019." *Id.*

### iii. *Turner* Step One: Administrative Remedies Were Available

The Court must first determine if Plaintiff's allegations, if taken as true, are enough to demonstrate that he exhausted his administrative remedies. *See Turner*, 541 F.3d at 1082. The Court accepts at this juncture that Plaintiff properly filed the July 21, 2019 Grievance and the June 30, 2021 Grievance, and will discuss these grievances in further detail once it proceeds to the second step of *Turner*. The only question to be resolved at this first step, then, is whether Plaintiff's allegations are sufficient to show that administrative remedies were unavailable to him between July 21, 2019, and June 30, 2021. Plaintiff's "unavailability" argument centers on two claims: that the Secretary's Office failed to respond to his July 21, 2019 Grievance and that Sgt. Lepore's threats of retaliation were sufficient to dissuade him from filing additional grievances. *See* Pl.'s Suppl. Br. at 3–6. The Court finds that, even if these allegations are true, they come nowhere close to establishing that the grievance process was "unavailable" to Plaintiff.

The Court accepts, for instance, that Sgt. Lepore threatened "substantial retaliation" against Plaintiff because it deterred Plaintiff "from lodging a grievance" and that Sgt. Lepore's threats "would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance[.]" *Turner*, 541 F.3d at 1085. But Sgt. Lepore's threats at the institutional level did not preclude Plaintiff from filing a "grievance of reprisal" directly with the Secretary's Office. *See Dimanche v. Brown*, 783 F.3d 1204, 1211, 1213 (11th Cir. 2015) (explaining that an inmate can file a grievance "directly [with] the Secretary of the FDOC" if the inmate alleges that "staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure" (quoting Fla. Admin. Code r. 33-103.002)). The Eleventh Circuit

has consistently held that the grievances in a FDOC facility remain available to an inmate, even if there are threats of retaliation, so long as the prisoner can access the "grievance of reprisal" system. *See, e.g.*, *Gipson*, 750 F. App'x at 953 ("The district court also correctly concluded that the grievance process was available to Gipson, inasmuch as there is no evidence of anything preventing him from correcting the defects in his 'grievance of reprisal' to the Secretary of the FDOC."); *Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017) (affirming exhaustion dismissal where plaintiff "could have bypassed the three-step procedure and filed a 'grievance of reprisal' directly with the Secretary of the FDOC"); *see also McNeely v. Sec'y, Fla. Dep't of Corr.*, No. 3:16-CV-377, 2019 WL 448379, at *10 (M.D. Fla. Feb. 5, 2019) ("Nevertheless, taking McNeely's account of the facts as true, as the Court must, the Court determines that the FDOC grievance procedures were available to McNeely.  The FDOC rules provided that McNeely . . . could have bypassed the institutional level, and submitted a grievance of reprisal directly with the FDOC Secretary's Office in a sealed envelope . . . . McNeely [never] filed a grievance of reprisal . . . even in the midst of Godwin and Reddish's alleged threats." (cleaned up)).  In short, grievances were still "available" to Plaintiff since he could have filed a "grievance of reprisal" directly with the Secretary's Office, even if Sgt. Lepore prevented Plaintiff from filing grievances at the institutional level.

In response, Plaintiff relies on his other basis for alleging "unavailability"—the Secretary's Office alleged refusal to consider his grievances.  *See* Pl.'s Suppl. Br. at 3–5.  If, in other words, Plaintiff demonstrates that the Secretary's Office was "unable or consistently unwilling to provide any relief," then it could also excuse his failure to file a "grievance of reprisal." *Ross*, 578 U.S. at 643.  The problem is Plaintiff's own evidence belies the notion that the Secretary's Office is "consistently unwilling to provide relief."  Plaintiff's only evidence for this proposition is that the

Secretary never responded to his July 21, 2019 Grievance. *See* Pl.'s Suppl. Br. at 3. Plaintiff does not dispute that the Secretary's Office received and responded to two other grievances that he filed: the June 30, 2021 Grievance and another non-medical grievance filed on July 3, 2022. *See generally* Plaintiff's Grievance History, [ECF No. 52-1], at 1–10. This indicates that the Secretary's Office did not operate as a "dead end" since it offered the "possibility of some relief" to Plaintiff. *See Varner v. Shepard*, 11 F.4th 1252, 1259 (11th Cir. 2021) (citing *Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001)); *see also McDowell v. Bowman*, No. 21-10840, 2022 WL 4140331, at *4 (11th Cir. Sept. 13, 2022) (rejecting claim that administrative remedies were "unavailable" because the plaintiff "never received a response" when the same inmate had received responses for other grievances he filed).

Even if the Court accepts all of Plaintiff's allegations as true, he has still failed to show that FDOC officials were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the grievance process was so "opaque" that it could not be used, or that he was thwarted from filing grievances "through machination, misrepresentation, or intimidation." *Geter*, 974 F.3d at 1355. Accordingly, the Court rejects Plaintiff's argument that administrative remedies were unavailable to him between July 21, 2019, and June 30, 2021.

### iv. *Turner* Step Two: Plaintiff Partially Exhausted his Remedies

Next, the Court must make "specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. Since Plaintiff's own allegations fail to establish that the prison's administrative remedies were unavailable to him, the Court need only determine if Plaintiff fully exhausted his administrative remedies as to the July 21, 2019 Grievance and the June 30, 2021 Grievance. Even if the Court finds that Plaintiff completed the grievance process, exhaustion will only be accomplished if the issues raised in Plaintiff's grievances are congruent

with the claims he is currently raising in the Complaint. *See Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) ("[T]he purpose of administrative exhaustion . . . is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." (cleaned up)); *see also, e.g.*, *Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) ("Pearson did not mention Orr, Philbin, or Taylor [in his grievance], nor did he include any complaint about a denial of medical care or any injuries he suffered from Weston's use of pepper spray. As a result, the grievance would not have alerted prison officials to the problem and given them an opportunity to resolve it before being sued.").

To begin, the Court finds that the issues that were timely raised in the June 30, 2021 Grievance have been fully exhausted. To recap, Plaintiff alleged in the June 30, 2021 Grievance that he was not receiving effective treatment for his "severe abdominal pain, constipation/diarrhea cycles and cronic [sic] heartburn" despite placing sick calls on June 12, 2021, and June 25, 2021. June 30, 2021 Grievance, [ECF No. 52-1], at 4. Dr. Santana denied the grievance on July 15, 2021, explaining that Plaintiff's "concerns are being addressed" because he was "seen by the provider on July 1, 2021" and that a "General Surgery consult was written and submitted on July 2, 2021." Response to June 30, 2021 Grievance, [ECF No. 52-1], at 3. Plaintiff appealed to the Secretary's Office, arguing that "no treatment or appointment" had been provided, that the medical staff "do not take my medical needs seriously enough," and that this incident was the latest example of a "pattern and practice of delays, misdiagnoses and lack of timely and effective treatment [that] has been ongoing since July 1, 2019." June 30, 2021 Grievance Appeal, [ECF No. 52-1], at 2. The Secretary's Office denied the appeal, finding that Dr. Santana's July 15, 2021 response "appropriately addresses the issue you presented." Secretary's Response to June 30, 2021 Grievance, [ECF No. 52-1], at 1.

Defendants argue that the June 30, 2021 Grievance is "egregiously untimely, rendering [Plaintiff's] exhaustion requirement unsatisfied." Defs.' Suppl. Br. at 3. The Court agrees that, insofar as Plaintiff tried to use the June 30, 2021 Grievance to retroactively complain about every alleged instance of deliberate indifference since July 1, 2019, those claims are unexhausted since the June 30, 2021 Grievance was filed more than fifteen days after "[t]he date on which the incident or action being grieved occurred[.]" Fla. Admin. Code r. 33-103.011(1)(b)(2); *see also Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that an untimely grievance "is not sufficient to exhaust [plaintiff's] administrative remedies").[1] However, Plaintiff made timely complaints about the prison's alleged failure to treat him after submitting sick calls on June 12, 2021, and June 25, 2021; in fact, these concerns were specifically addressed by Dr. Santana and the Secretary's Office in their responses to Plaintiff's grievance. *See* June 30, 2021 Grievance History, [ECF No. 52-1], at 1–4. The Court concludes, therefore, that Plaintiff has fully exhausted this discrete claim—that prison officials failed to provide timely and effective treatment after he submitted multiple sick calls in June 2021—because Plaintiff completed the two-step process for bringing a medical grievance under FDOC's regulations. *See Parzyck*, 627 F.3d at 1218. Any other claim that Plaintiff was attempting to bring in his June 30, 2021 Grievance was untimely and, therefore, unexhausted.

The Court now turns to the July 21, 2019 Grievance. Plaintiff alleges that he properly submitted this grievance to the Secretary's Office but received no response. *See* Pl.'s Suppl. Br. at 3–4. Defendants submit records indicating that the Secretary's Office never received the July 21, 2019 Grievance. *See* Inmate Grievance Appeals Records, [ECF No. 52-1], at 5. The Court

---

[1] Plaintiff's only excuse for this untimely filing is that he could not file a grievance earlier because the process was unavailable to him. *See* Pl's Suppl. Br. at 6. The Court has already considered and rejected this argument.

can envision only three scenarios that would explain such a major conflict in the evidence: (1) the Secretary's Office received the July 21, 2019 Grievance but deliberately ignored it; (2) the Secretary's Office never received the July 21, 2019 Grievance because of some unidentified mishap; or (3) the July 21, 2019 Grievance is improper, fraudulent, or otherwise not properly submitted to the Secretary's Office.

After weighing the evidence, as it is required to do under *Turner*, the Court finds that the third option is almost certainly the correct one. The July 21, 2019 Grievance is conspicuously different from the other two grievances Plaintiff filed with the Secretary's Office in three important ways: (1) unlike his other grievances, Plaintiff did not complete the section of the July 21, 2019 Grievance where he could consent to a thirty-day extension; (2) the Secretary's Office has records of Plaintiff's other grievances and responded to each of them; and, most importantly, (3) the July 21, 2019 Grievance does not contain any notation indicating that it was ever received by the Secretary's Office.[2] *Compare* Pl.'s Suppl. Br. at 9, *with* June 30, 2021 Grievance Appeal, [ECF No. 52-1], at 2, *and* July 3, 2022 Grievance Appeal, [ECF No. 52-1], at 8. These major discrepancies—which Plaintiff tries to explain away with the speculative excuse that the Secretary's Office must have never received his grievance—is compelling evidence that Plaintiff never properly filed the July 21, 2019 Grievance with the Secretary's Office. *See, e.g.*, *Whatley*, 898 F.3d at 1083 ("The district court also appropriately considered Mr. Whatley's history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances. Mr. Whatley's claim was belied by the lack of

---

[2] The Secretary's Office is required to "date the receipt portion of the grievance or appeal" as soon as it receives a grievance, and it must send a copy of the grievance back to the inmate with a notation that it was filed with the Secretary's Office. Fla. Admin. Code r. 33-103.007(6)(a), (9)(a); *see also, e.g.*, *Lawson v. McGee*, No. 19-CV-81526, 2021 WL 2515683, at *5 (S.D. Fla. June 18, 2021) (rejecting grievance which "contain[ed] no other stamps or indications that it was received by the Department of Corrections or by the facility").

documentation anywhere in the grievance record system relating to the alleged January 18 filing."); *Deffendall v. Stinson*, No. 21-CV-14201, 2023 WL 8170937, at *10–11 (S.D. Fla. Nov. 24, 2023) (citing cases for the proposition that a prisoner's "proficiency" at filing grievances is "highly probative evidence" that a grievance missing from a jail's records was "either never filed or . . . created much later"). For these reasons, the Court finds that Plaintiff failed to exhaust his administrative remedies as to the July 21, 2019 Grievance since it was never properly filed with the Secretary's Office. *See Johnson*, 418 F.3d at 1157–58 ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002))).

After carefully reviewing all the evidence pertaining to exhaustion and Plaintiff's use of the prison's administrative remedies, the Court concludes that Plaintiff exhausted a claim that the prison's medical staff failed to adequately respond to his requests for medical treatment in June 2021. To the extent the Complaint raises any other claim, those portions must be **DISMISSED** because Plaintiff failed to exhaust his administrative remedies.

### B. Failure to Comply With "Pre-Suit" Requirements

The Court rejects this argument out of hand. "Florida law requires that before filing any claim for personal injury or wrongful death <u>arising from medical malpractice</u>, the claimant conduct an investigation of the claim and send the defendant(s) a notice of intent to sue[.]" *Johnson v. McNeil*, 278 F. App'x 866, 871 (11th Cir. 2008) (emphasis added) (quoting FLA. STAT. § 766.203(2) (2005)). Since a claim of deliberate indifference under the Eighth Amendment demands more than mere malpractice to state a claim, Florida's pre-suit requirements for medical malpractice lawsuits do not apply here. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *see also Johnson*, 278 F. App'x at 870–71 (applying pre-suit requirements to medical

malpractice claims but refusing to do so for deliberate indifference claims brought under § 1983); *R.W. v. Armor Corr. Health Servs., Inc.*, 830 F. Supp. 2d 1295, 1302–03 (M.D. Fla. 2011) (same). Insofar as Defendants argue that Plaintiff's claims sound in medical malpractice, the Court has already found that the Complaint only stated a claim of deliberate indifference brought under 42 U.S.C. § 1983. *See Pennington*, 2023 WL 4763222, at *2–3. Plaintiff also confirms in his Response that he never intended to bring a medical malpractice claim against any of the Defendants. *See* Resp. at 8–9. Because the requirements of Chapter 766 do not apply to deliberate indifference claims, the Court denies the Motion on this point.

### C. Failure to State a Claim

Defendants' final argument is that Plaintiff failed to allege that any of the Defendants were deliberately indifferent to his serious medical needs. *See* Mot. at 3. Since Plaintiff's failure to exhaust his administrative remedies eliminates most of the claims raised in the Complaint, the Court need only consider whether Defendants' alleged failure to provide timely treatment after Plaintiff placed sick calls on June 12, 2021, and June 25, 2021, constituted deliberate indifference in violation of the Eighth Amendment. *See* June 30, 2021 Grievance, [ECF No. 52-1], at 4. To state a claim of deliberate indifference to serious medical needs, Plaintiff must show that he had a "serious medical need," that Defendants exhibited "deliberate indifference to that need," and that there was "causation between [Defendants'] indifference and [Plaintiff's] injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). The Complaint does not allege specific facts about any of these three elements *vis a vis* the Defendants' failure to provide medical care in and around June 2021. Plaintiff does not state what his serious medical need was during this time, he does not describe how Defendants were deliberately indifferent in treating that specific serious medical need, and he does not explain how Defendants' indifference caused an injury. *See*

*generally* Compl., [ECF No. 1]. Nevertheless, the Court shall (and must) provide Plaintiff with an opportunity to file an amended complaint since "a more carefully drafted complaint" might be able to state a claim of deliberate indifference that is <u>solely</u> based on the claim Plaintiff was able to exhaust. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991). That said, the Court stresses that Plaintiff's amended complaint must be limited to the specific claim that Plaintiff managed to exhaust (*i.e.*, that Okeechobee C.I.'s medical staff failed to adequately treat him after he submitted sick calls on June 12, 2021, and June 25, 2021). Any portion of the amended complaint which alleges facts unrelated to this time period will be stricken.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, [ECF No. 35], is **GRANTED in part**. Plaintiff's Complaint, [ECF No. 1], is **DISMISSED without prejudice**.

2. Plaintiff must file his amended complaint on or before **April 19, 2024**. Failure to file an amended complaint on time and in compliance with this Order may result in the entire case being dismissed for failure to comply with Court orders. *See* FED. R. CIV. P. 41(b).

3. Defendants shall file an answer or responsive pleading within **fourteen days** of the amended complaint being filed.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of March, 2024.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**